222 N.J. Super. 83 (1988)
535 A.2d 1010
G.B. AND R.B., PETITIONERS, AND N.B., PETITIONER-APPELLANT,
v.
STATE HEALTH BENEFITS COMMISSION, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1987.
Decided January 6, 1988.
*84 Before Judges SHEBELL, GAYNOR and ARNOLD M. STEIN.
Edward Kopelson argued the cause for appellant N.B. (David Lazarus, Director of Litigation, Community Health Law Project, attorney; Edward Kopelson, on the brief).
Adele C. Baker, Deputy Attorney General, argued the cause for respondent State Health Benefits Commission (W. Cary Edwards, Attorney General, attorney; Michael R. Clancy, Deputy Attorney General, of counsel; Adele C. Baker, on the brief).
Alfred A. Slocum, Public Advocate, filed an amicus curiae brief and reply brief on behalf of appellant (William F. Culleton, Jr., Assistant Deputy Public Advocate, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Appellant N.B. appeals from a decision of the respondent State Health Benefits Commission (Commission) which denied him continued coverage as a dependent under the State Health Benefits Program after age 23, despite his total disability. The basis for denial was that appellant's total disability results from mental illness rather than mental retardation or physical handicap.
Appellant, until age 23, was insured for state-sponsored health benefits as a qualified dependent under policies held by his parents, R.B. and G.B., both of whom were state employees. *85 On November 16, 1984, the Commission notified the parents that their request for a continuation of insurance coverage for their mentally-ill son had been denied. R.B. requested the Commission to reconsider its decision, and on February 7, 1985, the Commission again refused to continue coverage.
The parents filed a timely administrative appeal of the Commission's decision on March 28, 1985, and the Commission referred the matter to the Office of Administrative Law (OAL) for a hearing. On June 14, 1985, the administrative law judge (ALJ) entered a consent order permitting appellant to intervene. The judge required that the insurance carriers be notified of their eligibility to participate in the administrative proceeding. Blue Cross/Blue Shield of New Jersey (BC/BS) accepted the invitation to intervene. A formal order of intervention was entered, but on April 8, 1986, BC/BS withdrew from participation, explaining that its intervention became unnecessary because the requested relief would not affect BC/BS subscribers in general.
A hearing was held before the ALJ on April 15, 17, 18 and 29, and May 20, 1986. The Initial Decision, dated August 28, 1986, recommended that the Commission's determination denying continued benefits to appellant be affirmed. At a meeting held on October 8, 1986, the Commission adopted the ALJ's decision and on November 10, 1986, the Commission issued its final administrative determination.
Appellant has filed a timely notice of appeal from the Commission's final decision although his parents have not appealed. The Department of the Public Advocate was granted leave to appear as amicus curiae in this appeal and filed a brief and reply brief.
Appellant's parents have participated in the State Health Benefits Program since 1971 and 1975. Appellant was enrolled as a qualified dependent under his parents' state-sponsored insurance policies from 1971 through 1984, when he achieved 23 years of age. The insurance provided to appellant by the program included medical, hospital, and surgical coverage *86 through a master contract with BC/BS, and major medical through a master contract with the Prudential Insurance Company of America (Prudential). These contracts were obtained and administered by the Commission, a state agency statutorily charged with negotiating for insurance benefits for state employees under N.J.S.A. 52:14-17.28.
Prior to his 23rd birthday, appellant became totally disabled because of mental illness. Thus, he became dependent on his parents for support and maintenance. The diagnosis of mental illness was made by various health professionals who examined him. He was confined in a psychiatric hospital several times and required restricted living arrangements. Nothing in the record suggests that appellant is either mentally retarded or physically handicapped. The Social Security Administration classified appellant as "totally disabled" and granted his request for disability benefits more than two years before he became 23.
On September 19, 1984, a timely request was filed with BC/BS to continue appellant's health benefits beyond his 23rd birthday. Under the state-sponsored program, BC/BS was responsible for determining initially whether a dependent's insurance coverage would be continued beyond age 23. Any determination made by BC/BS concerning continuation of a dependent's medical, hospital, and surgical benefits was adopted as a matter of course by Prudential.
In November 1984, BC/BS denied the request for continuation of appellant's benefits based upon appellant's failure to meet the necessary criteria for continuation given in the master contract with the State. The pertinent contract provision follows:
If the Employee maintains Family or Parent and Children coverage under this Contract, coverage will continue for an unmarried child covered as a Dependent by the Contract prior to age 23, if the child:
(i) is incapable of self-sustaining employment because of mental retardation or physical handicap; and
(ii) became so incapable before age 23; and
(iii) is chiefly dependent upon the Employee for support and maintenance; and if

*87 (iv) the Employee has submitted proof satisfactory to the Plans of such child's incapacity within 31 days of the last day of the calendar year in which such child's twenty-third birthday occurred.
[Emphasis supplied].
On November 15, 1984, Prudential likewise declined to continue benefits for appellant, basing its decision on a provision of its master contract which stated:
Continued Coverage for an Incapacitated Child: This applies only to the Dependents insurance an Employee has for a child. The insurance for the child will not end on the date the age limit in the definition of Qualified Dependent is reached if both of these are true:
(1) The child is then incapable of self-sustaining employment due to mental retardation or physical handicap. Prudential must receive proof of this within the next 31 days.
(2) The child otherwise meets the definition of Qualified Dependent.
If these conditions are met, the age limit will not cause the child to stop being a Qualified Dependent. This will apply as long as the child remains so incapacitated.
[Emphasis supplied].
Continued coverage was thus denied, even though appellant was incapable of self-sustaining employment before attaining the age of 23, was unmarried and dependent upon his parents, and had given timely proof of incapacity. The reason for denial was that appellant's incapacity resulted from mental illness rather than mental retardation or physical handicap.
On November 28, 1984, the Commission's benefits coordinator wrote to his supervisor and explained that mental illness is not classified with mental retardation or physical handicaps because it is believed to be less debilitating and more temporary, and because the administrative task of defining and verifying mental illness would be great and the costs associated with covering the additional dependents would be high. The administrative law judge who heard the case cited the administrative burden and the increased costs of the program as "significant concerns" when he affirmed the Commission's decision denying continued benefits to appellant.
Appellant argues that the Commission's extension of continued benefits to dependents who are totally disabled due to mental retardation or physical handicaps but not to those who *88 are totally disabled due to mental illness is in contravention of the State Health Benefits Program Act (the act), N.J.S.A. 52:14-17.25 et seq. The act was passed in 1961 for the purpose of procuring health benefits for state employees. N.J.S.A. 52:14-17.25; N.J.S.A. 52:14-17.27. The Commission created under the act had as its primary function to
negotiate with and arrange for the purchase, on such terms as it deems to be in the best interests of the State and its employees, ... providing ... benefits covering employees of the State and their dependents, and [the Commission] shall execute all documents pertaining thereto for and on behalf and in the name of the State. [N.J.S.A. 52:14-17.28; emphasis supplied].
The statute requires that insurance be available to all eligible employees and their dependents and that the procured insurance benefits meet or exceed a stated minimum standard. N.J.S.A. 52:14-17.28. No statutory requirement expressly mandates the extension of continued benefits to any dependents over the age of 23.
The act specifically provides that "[t]he commission shall not enter into a contract under this act ... unless coverage is available to all eligible employees and their dependents on the basis specified by section 7." Ibid. Section 7 provides for uniform effective dates for all employees and in addition states in part:
The commission shall establish such rules and regulations governing the enrollment and effective dates of coverage of dependents of employees as it deems are necessary or desirable.... Under the rules and regulations established by the commission, each employee shall be given the opportunity to enroll for coverage for his dependents as of the earliest date he becomes eligible for such enrollment. An employee may elect to enroll his dependents for both basic coverage and major medical expense coverage but may not enroll for either coverage alone. [N.J.S.A. 52:14-17.31].
The act directs that the insurance procured must furnish certain minimum health benefits, including hospitalization, surgical, major medical, and obstetrical coverage, but the Commission is given discretion in determining what coverages are to be provided above the specified minimum requirements. N.J.S.A. 52:14-17.29(A).
The Commission also has discretion under the following provision in the act:

*89 (B) Benefits under the contract or contracts purchased as authorized by this act may be subject to such limitations, exclusions, or waiting periods as the commission finds to be necessary or desirable to avoid inequity, unnecessary utilization, duplication of services or benefits otherwise available, including coverage afforded under the laws of the United States, such as the Federal medicare program, or for other reasons. [N.J.S.A. 52:14-17.29, emphasis supplied].
In addition the act states that dependents' coverage under the health benefits program, is "subject to such regulations and conditions as the commission and the carrier may prescribe," N.J.S.A. 52:14-17.30(B), and that "[t]he commission shall establish rules and regulations as may be deemed reasonable and necessary for the administration of this act." N.J.S.A. 52:14-17.27.
One such regulation is N.J.A.C. 17:9-2.16, which states:
The State Health Benefits Commission adopts by reference all of the policy provisions contained in the contracts between the carriers, the health maintenance organizations and the State Health Benefits Commission as well as any subsequent amendments thereto, to the exclusion of all other possible coverages.
Under this regulation dependents of those enrolled in the health benefits program are eligible only under the terms explicitly provided in the relevant insurance contracts. However, there is no evidence that insurance contracts to allow continued benefits to all totally disabled dependents over the age of 23 cannot be obtained.
The Commission's authority to arrange for extended coverage to dependents who are totally disabled upon attaining age 23 is expressly granted in the act.
The commission may also establish regulations prescribing an extension of coverage when an employee or dependent is totally disabled at termination of coverage. [N.J.S.A. 52:14-17.32].
Appellant contends that this statutory language requires that if the Commission extends continued benefits for any group of totally disabled dependents, it must extend benefits for all totally disabled dependents.
We agree the statute envisions that all totally disabled dependents are to be treated similarly. The continuation of *90 benefits only for mentally retarded and physically handicapped dependents, and not for mentally ill dependents, is contrary to the readily apparent legislative goal of providing coverage to employees and their dependents on a broad and equal basis. That N.J.S.A. 52:14-17.32 leaves the question of whether to make available the continuation of insurance benefits to totally disabled dependents to the sole discretion of the Commission does not detract from our conclusion that the Legislature intended that if continued benefits are procured, they be extended to all similarly situated dependents. The provision that the insurance benefits afforded to state employees and their dependents are subject to such limitations and exclusions "as the commission finds to be necessary or desirable to avoid inequity, unnecessary utilization, duplication of services or benefits otherwise available, including coverage afforded under the laws of the United States, such as the Federal medicare program, or for other reasons," N.J.S.A. 52:14-17.29(B), in our view, only gives the Commission the right to limit the extent of benefits payable to those persons provided with coverage and to circumscribe on a fair and rational basis those who are deemed eligible for extended coverage.
We cannot, however, reasonably conclude that the Legislature intended to invest the Commission with the authority to exclude certain categories of dependents who were totally disabled based solely on the cause of the disability. When a dependent cannot provide for himself, the cause of the disability is irrelevant to and does not alter the burden upon the state employee.
The ALJ determined that the act implicitly empowered the Commission to identify and determine who was "totally disabled" for the purpose of continuing insurance coverage under N.J.S.A. 52:14-17.32. We concur with that proposition. The cause of the dependent's total disability, however, is not germane to the question of whether the person is totally disabled. What is required is that the same test of total disability be *91 applied to all dependents if coverage is to be extended to totally disabled dependents.
The Commission's rationale for extending continued coverage to only those dependents who were totally disabled due to mental retardation or physical handicaps and not to those who were mentally ill was based on its finding of the increased costs of coverage and the alleged greater administrative burden in determining the extent of a dependent's mental illness. This rationale could be applied to justify the exclusion of any category of totally disabled dependents which the Commission might choose to single out. Indeed, the larger the group that can be excluded the stronger the economic basis for exclusion of that group becomes even though the need for coverage is greater. We find the exclusion of the mentally ill based on that rationale to be arbitrary as well as beyond the statutory powers of the Commission.
The treatment of mental illness and the potential that such care will increase the costs of health insurance is not a serious issue here. The statute strictly limits the extent of benefits payable for treatment of mental illness to state employees and their dependents. N.J.S.A. 52:14-17.29(A)(2).
In Barone v. Department of Human Services, 107 N.J. 355, 372-73 (1987), our Supreme Court, in rejecting an equal protection argument, concluded that a state may consider "fiscal and administrative constraints in defining eligibility for social welfare programs." The Court suggests that the fiscal and administrative burdens placed on the health benefits program are legitimate factors for restricting eligibility to participate in those programs. Nonetheless, this holding cannot support an arbitrary exercise of the legitimate function of cost reduction.
The Commission's rationale for denying continued insurance coverage to mentally ill dependents cannot be justified here by the mere showing of increased program costs and administrative expenses. Under the statute, the Commission may exercise its discretion and cut costs by limiting insurance benefits. N.J.S.A. 52:14-17.29(B). It may not do so by excluding a class *92 of dependents who are as equally disabled and burdensome to state employees as those who are presently covered. Using the cause of the disability as the basis for disqualification brings about this unjust result.
The Commission can point to no legislative goals or statutory authority for denying continuation benefits to the mentally ill. The Commission acted under specific legislative authority in extending benefits to dependents. It has express statutory authority to limit those benefits both as to scope and extent and it can enact a more stringent definition of total disability if cost containment requires it. We find no evidence that it needs any greater authority to carry out its statutory functions or that the Legislature intended to grant any further powers.
In light of our holding that the Commission is without statutory authority to exclude from coverage those who are totally disabled by mental illness while at the same time procuring coverage for those dependents who are disabled by mental retardation or physical disability, we need not consider appellant's equal protection arguments.
We reverse the decision of the Commission and remand for entry of an order of continuation of eligibility, if such an order is otherwise appropriate.